J-S50001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYMIER MCPHERSON | : | |
| | : | |
| Appellant | : | No. 874 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000496-2017

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    Filed: January 28, 2021

Appellant, Tymier McPherson, appeals from the judgment of sentence of 25-50 years' incarceration, imposed following his guilty plea to charges of conspiracy,[1] third-degree murder,[2] and a firearm offense.[3]  Herein, Appellant challenges the denial of his post-sentence motion seeking to withdraw his plea.  After careful review, we affirm.

The trial court summarized the facts read into the record during Appellant's plea hearing as follows:

> A series of videos collected from the area of 15th and Venango, in Philadelphia[,] Pa., from November 21st of 2016, at approximately

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 903.

[2] 18 Pa.C.S. § 2701(c).

[3] 18 Pa.C.S. § 6106.

2:15 p.m., show two men walking back and forth on the corner of 15th and Venango for approximately three minutes.  At that time, a white minivan pulls up.  The male identified as [Appellant], pulls a ski mask over a portion of his face, approaches the van and fires repeatedly into the van with a gun that he pulls from the pocket of his pants.  The male with [Appellant] also fires a gun into the van.  [Appellant]'s gun locks back and he and his co-conspirator then run down Venango toward 16th Street.  The van proceeds through the 15th Street intersection and crashes into a fence.

[Appellant] is seen on video wearing a distinctive black jacket; a puffy down type jacket, grey or light colored sweatpants with diagonal zippers on each leg and black material around those zippers, a black cord hanging down in the front of his pants[,] and dark boot type Nike sneakers.

Police Officer Rillera responded to the scene and saw a male, later identified as Ramell Dorsey, exiting the van.  Dorsey was suffering from gunshot wounds.  In the driver seat was a male, later identified as Gerald Stewart, who was suffering from multiple gunshot wounds, including one to the head.  Mr. Stewart was pronounced deceased at Temple Hospital.  Mr. Dorsey was treated for a fracture to his tibia and to his collarbone as a result of gunshot wounds.  Mr. Dorsey survived his injuries.

A woman living approximately one block from the crime scene called police dispatch stating that after she heard shots fired, she saw two males approach an abandoned house on N. 16th Street and place something in the back window.  She gave a description [that] matched the clothing that [Appellant] was wearing.  Police recovered two .45 caliber guns and a ski mask from that location.  One hour later, [Appellant] was apprehended attempting to climb a fence to get out of the backyard of that property.

After being read his **Miranda**[4] warnings, [Appellant] gave a statement to Detective Centeno from the Homicide Unit admitting that he shot at both victims in retaliation for prior bullying incidents.

Ballistics evidence confirmed that the weapons recovered from the abandoned property matched fired cartridge casings recovered from the shooting scene.

---

[4] **See Miranda v. Arizona**, 396 U.S. 868 (1969).

Trial Court Opinion (TCO), 6/15/20, at 2-3 (citing Notes of Testimony, 12/11/17, at 37-51).

> Subsequently,
>
> [o]n December 11, 2017, [Appellant] pleaded guilty, pursuant to a negotiated plea, to third-degree murder, conspiracy, and [a v]iolation of the Uniform Firearms Act…. On September 5, 2018, [he] was sentenced to twenty (20) to forty (40) years' incarceration for third-degree murder and five (5) to ten (10) years' [imprisonment] for conspiracy to run consecutively, for an aggregate sentence of twenty-five (25) to fifty (50) years of incarceration.[5]
>
> On September 17, 2018, [Appellant] filed both a Motion to Withdraw Guilty Plea and a Motion for Reconsideration of Sentence. On September 25, 2018, both motions were denied by this court. On November 7, 2018[,] [Appellant] filed an untimely appeal to the Superior Court[.] On May 1, 2019, the Superior Court quashed the appeal as untimely.
>
> On May 14, 2019, [Appellant] filed a PCRA[6] petition requesting reinstatement of his appellate rights[,] which was granted on February 26, 2020. On March 08, 2020, [Appellant] filed an appeal to the Superior Court. On May 20, 2020, [Appellant] filed a Statement of Matters Complained of on Appeal Pursuant to [Pa.R.A.P.] 1925(b)….

*Id.* at 1-2 (footnotes omitted). The trial court issued its Rule 1925(a) opinion on June 15, 2020.

> Appellant now presents the following question for our review:
>
> Did the trial court err in denying Appellant's motion to withdraw his guilty plea as it was not knowingly, intelligently[,] and voluntarily entered[,] as it was based on the premise that the agreed-upon sentence at the plea would be reduced prior to sentencing if he provided certain information about his co-

---

[5] No further penalty was imposed for the firearm conviction.

[6] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

defendant to the Commonwealth (which he did[)], yet said sentence was not reduced[?]

Appellant's Brief at 4 (unnecessary capitalization omitted).

Initially, we note that our

law is clear that, to be valid, a guilty plea must be knowingly, voluntarily[,] and intelligently entered.  There is no absolute right to withdraw a guilty plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court.  To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to manifest injustice.  A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently.  A defendant's disappointment in the sentence imposed does not constitute manifest injustice.

*Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003) (cleaned up).

We have carefully reviewed the parties' briefs, the supporting case law set forth therein, and the relevant portions of the record pertaining to Appellant's claim.  The Honorable Rose Marie DeFino-Nastasi, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned opinion addressing, and ultimately rejecting, Appellant's claim that he was entitled to withdraw his guilty plea.  We affirm Appellant's judgment of sentence for the reasons set forth in that opinion.  *See* TCO at 3-8 (concluding that Appellant knowingly, intelligently, and voluntarily entered the negotiated guilty plea, and that he subsequently "failed to keep his side of the bargain[,] in that he did not cooperate, so he did not receive the contingent, additional benefit of a further reduced sentence").

Judgment of sentence *affirmed*.

- 4 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/21

Filed 8/30/2020 9:53:00 PM Superior Court Eastern District
874 EDA 2020

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
### CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0000496-2017

          :

v.                 :

          :

TYMIER McPHERSON          :     874 EDA 2020

### OPINION

Rose Marie DeFino-Nastasi, J.                      June 15, 2020

### PROCEDURAL HISTORY

On December 11, 2017, Tymier McPherson (the "Defendant") pleaded guilty, pursuant to a negotiated plea, to third-degree murder,[1] conspiracy,[2] and Violation of the Uniform Firearms Act § 6106.[3] On September 5, 2018, the Defendant was sentenced to twenty (20) to forty (40) years' incarceration for third-degree murder and five (5) to ten (10) years' for conspiracy to run consecutively, for an aggregate sentence of twenty-five (25) to fifty (50) years of incarceration.[4]

On September 17, 2018, the Defendant filed both a Motion to Withdraw Guilty Plea and a Motion for Reconsideration of Sentence. On September 25, 2018, both motions were denied by this court. On November 7, 2018 the Defendant filed an untimely appeal to the Superior Court.[5] On May 1, 2019, the Superior Court quashed the appeal as untimely.

On May 14, 2019, the Defendant filed a PCRA petition requesting reinstatement of his appellate rights which was granted on February 26, 2020. On March 08, 2020, the Defendant

---

[1] 18 Pa.S.C. § 2501(c).
[2] 18 Pa.S.C. § 903.
[3] 18 Pa.S.C. § 6106.
[4] No further penalty was imposed on the VUFA § 6106 conviction.
[5] Since counsel was retained, this court requested that he file a motion to withdraw if he was not going to perfect the appeal so that counsel could be appointed. Counsel failed to do so, and the Defendant filed an untimely appeal. As such, by copy of a letter dated January 28, 2019, this court requested the Superior Court to remand for appointment of counsel. On

filed an appeal to the Superior Court. On May 20, 2020, the Defendant filed a Statement of Matters Complained of on Appeal Pursuant to Rule 1925 (b) claiming the following:

I. The trial court erred in denying the Defendant's request to withdraw his guilty plea due to the following:

 A. The Defendant was promised (but did not receive) a lower sentence if he provided information regarding other involved individuals, which he in fact did;

 B. The Defendant's plea was not knowingly, intelligently nor voluntarily entered as it was based on the premise that his sentence would be reduced once he supplied the information requested;

 C. No prejudice would have resulted to the Commonwealth if this plea would have been withdrawn.

## STATEMENT OF FACTS

The facts as read into the record during the plea are summarized as follows:

A series of videos collected from the area of 15th and Venango, in Philadelphia Pa., from November 21st of 2016, at approximately 2:15 p.m., show two men walking back and forth on the corner of 15th and Venango for approximately three minutes. At that time, a white minivan pulls up. The male identified as the Defendant, pulls a ski mask over a portion of his face, approaches the van and fires repeatedly into the van with a gun that he pulls from the pocket of his pants. The male with the Defendant also fires a gun into the van. The Defendant's gun locks back and he and his co-conspirator then run down Venango toward 16th Street. The van proceeds through the 15th Street intersection and crashes into a fence.

The Defendant is seen on video wearing a distinctive black jacket; a puffy down type jacket, grey or light colored sweatpants with diagonal zippers on each leg and black material

2

around those zippers, a black cord hanging down in the front of his pants and dark boot type Nike sneakers.

Police Officer Rillera responded to the scene and saw a male, later identified as Ramell Dorsey, exiting the van. Dorsey was suffering from gunshot wounds. In the driver seat was a male, later identified as Gerald Stewart, who was suffering from multiple gunshot wounds, including one to the head. Mr. Stewart was pronounced deceased at Temple Hospital. Mr. Dorsey was treated for a fracture to his tibia and to his collarbone as a result of gunshot wounds. Mr. Dorsey survived his injuries.

A woman living approximately one block from the crime scene called police dispatch stating that after she heard shots fired, she saw two males approach an abandoned house on N. 16th Street and place something in the back window. She gave a description which matched the clothing that the Defendant was wearing. Police recovered two .45 caliber guns and a ski mask from that location. One hour later, the Defendant was apprehended attempting to climb a fence to get out of the backyard of that property.

After being read his Miranda warnings, the Defendant gave a statement to Detective Centeno from the Homicide Unit admitting that he shot at both victims in retaliation for prior bullying incidents.

Ballistics evidence confirmed that the weapons recovered from the abandoned property matched fired cartridge casings recovered from the shooting scene. Notes of Testimony ("N.T."), 12/11/2017 at 37–51.

## ANALYSIS

### I. Validity of the Plea

The Defendant claim is that his guilty plea was not knowing, intelligent, or voluntary as it was based on the premise that his sentence would be reduced once he cooperated with the

3

Commonwealth by supplying information as to the identity of his co-defendant, and the Commonwealth reneged on the deal.

The factual basis underlying this claim is as follows: the Defendant entered into plea negotiations with the Commonwealth whereby the Defendant would plead guilty to third-degree murder, conspiracy, and VUFA § 6106 in exchange for an aggregate sentence of twenty-five (25) to fifty (50) years' incarceration. Additionally, if the Defendant were to cooperate by giving the Commonwealth the name of his co-defendant, information sufficient to bring charges, and testify against his co-defendant, the court would consider a reduction in sentence. Furthermore, as part of the agreement, the sentence was deferred to enable the Defendant to proffer this information. Since the plea occurred on the day of trial and the Defendant had not yet provided the information requested as part of the cooperation agreement, the Defendant agreed to waive his right to withdraw his guilty plea.

The plea was entered on December 11, 2017. In late December of 2017 or early January of 2018, the Defendant gave the Commonwealth a nickname of "Reem" for the co-defendant. Sometime later, the Defendant identified the photo of a Raheem Cottman. Upon further investigation, the Commonwealth discovered that Cottman was murdered in December 2017, before the Defendant gave his name to the Commonwealth. Moreover, the Defendant provided no additional information to substantiate his claim that Cottman was actually his co-defendant. The Defendant was supposed to provide his phone to the Commonwealth which allegedly contained contacts with the co-defendant, but failed to do so.

Sentencing was continued due to the Defendant having failed to provide sufficient information and the Defendant was informed that he needed to cooperate if he wanted a reduction in his sentence. The Defendant failed to do so after two continuances. At sentencing,

4

defense counsel argued that the Defendant met his obligation under the plea bargain by providing an identification of his co-defendant and that the Defendant should not be penalized because the "co-defendant" died prior to being charged. The Commonwealth countered that the Defendant did not live up to his side of the bargain because he provided no information other than a nickname of a dead person, who, after investigation, could not be connected to the Defendant or the decedent.[6] When counsel was told that the Defendant was not entitled to a reduction in sentence, counsel requested to withdraw the plea, which the court denied.

The Defendant's first claim is that his plea was not knowing, intelligent and voluntary because he and the Commonwealth had a different understanding of what level of cooperation was needed to receive a reduction in sentence.

In order to ensure a voluntary, knowing, and intelligent plea, trial courts are required to ask the following questions in the guilty plea colloquy:

> 1) Does the defendant understand the nature of the charges to which he or she is pleading guilty?
> 2) Is there a factual basis for the plea?
> 3) Does the defendant understand that he or she has the right to a trial by jury?
> 4) Does the defendant understand that he or she is presumed innocent until found guilty?
> 5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?
> 6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590.

The guilty plea colloquy must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences." *Commonwealth v. Lewis*, 708 A.2d 497, 501 (Pa. Super. 1998). "Once a defendant has entered a plea of guilty, it is presumed that he was aware of

---

[6] The Commonwealth contended that the murder was a result of a gang war between three rival groups. After a thorough investigation on the part of the Commonwealth, no association was discovered between the alleged co-defendant and any of the gangs.

5

what he was doing, and the burden of proving involuntariness is upon him." *Commonwealth v. Stork,* 737 A.2d 789, 790 (Pa. Super. 1999) (citation and internal brackets omitted).

"In determining whether a guilty plea was entered knowingly and voluntarily, ... a court is free to consider the totality of the circumstances surrounding the plea." *Commonwealth v. Flanagan,* 854 A.2d 489, 513 (Pa. 2004)

The Defendant completed a written guilty plea colloquy form, after which the court conducted a full oral colloquy. The Defendant was advised of the charges against him, the maximum penalties, the right to a jury trial, the presumption of innocence and the terms of his negotiated cooperation agreement. *See* N.T., 12/11/2017 at 8–31. In fact, counsel for the Defendant set out the terms of the agreement on the record as follows:

> Mr. Silver: Cooperation will be two-fold, that, first, it is cooperation that is fruitful in allowing the government to have probable cause to arrest the individual. And Mr. McPherson is clear that his cooperation would also include, at that point, testimony. The cooperation, though, would not mean that the government would have to have a guilty verdict against the individual, just that he would cooperate.
>
> Mr. Silver: The understanding that we have is that if cooperation is not forthcoming then we have a guilty plea where the sentence would be 25-50 years. And I've explained to Mr. McPherson that I will go over it after you go over the plea to make sure he understands it, so that it is absolutely clear, to the court, obviously it is, but to Mr. McPherson.
>
> The Court: So are we calling this an open guilty plea?
>
> Miss Fairman: No. We are calling this at this point a plea to 25-50, Your Honor, with the possibility of a change—
>
> The Court: So we are calling it a negotiated guilty plea, basically.
>
> Mr. Silver: That the sentence can be open pending cooperation.
>
> The Court: --25 to 50 with the possibility of a lower sentence with cooperation?
>
> Miss Fairman: That's correct, Your Honor.
>
> . . .
>
> Miss Fairman: I want to make some things clear, because this arose today, this agreement about the possibility of cooperation. We did not have an opportunity to have the Defendant sign a formal agreement of cooperation which normally we would do. After conversations with counsel and what he has told me and what he has told me that he has explained to the Defendant, it should be clear on the record that the Defendant's cooperation, the sincerity of his cooperation, whether it is enough to bring charges is solely within the discretion of the Commonwealth to

6

determine whether there is enough evidence to bring charges against somebody, and therefore, reward, I guess, would be the word, the Defendant for that cooperation. The second thing that is normally in a memorandum of agreement that we have spoken to counsel about is the Defendant would not be able to withdraw his plea. Otherwise, these conditions would be meaningless if we can say we don't think there is cooperation and, therefore, we are not going to do that and the Defendant can just withdraw his plea. Just as if it were a memorandum of agreement, and perhaps we can do that formally after this proceeding we would ask that those two conditions be clear.

N.T., 12/11/2017 at 4–6, 31–33.

The court then further explained the agreement to the Defendant who said that he understood it. The law on plea negotiations is also instructive in analyzing the Defendant's claim.

> Courts have long recognized that plea negotiations and agreements are essential components of the criminal justice system. *See, e.g., Santobello v. New York*, 404 U.S. 257, (1971) (explaining that '[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice'). In this Commonwealth, we look upon the practice of plea bargaining with favor. *Commonwealth v. Zuber*, 353 A.2d 441, 443 (Pa. 1976). Plea agreements clearly are contractual in nature. *See Puckett v. United States*, 556 U.S. 129, 137, (2009) (stating that, 'although the analogy may not hold in all respects, plea bargains are essentially contracts').

*Commonwealth v. Ritz*, 153 A.3d 336, 342 (Pa. Super. 2016)

In assessing whether a plea agreement has been breached, the courts consider what the parties to the agreement reasonably understood the terms to be. *Commonwealth v. Hainesworth*, 82 A.3d 444, 447 (Pa. Super. 2013). In making this determination, the court looks at the totality of the circumstances and construes any ambiguities in the agreement against the Commonwealth. *Id.*

In the instant matter, the Defendant was fully colloquied regarding the cooperation agreement. The Defendant confessed to a first-degree murder. He received the benefit of his bargain by being permitted to plead to third-degree murder, thereby avoiding a life sentence. He

7

was made aware that his sentence would be twenty-five (25) to fifty (50) years' incarceration with the contingent, additional benefit, that if he cooperated, he would receive a lesser sentence. The Defendant received the benefit of avoiding a life sentence in exchange for his guilty plea. However, the Defendant failed to keep his side of the bargain in that he did not cooperate, so he did not receive the contingent, additional benefit of a further reduced sentence. Instead, he made empty promises and engaged in dilatory behavior, delaying his sentencing for ten months. Based on the foregoing, the plea was knowing, intelligent and voluntary.

## II.   Withdrawal of Guilty Plea

The Defendant's second claim is that the court erred in not granting the Defendant's motion to withdraw his guilty plea prior to sentencing.

> A pre-sentence motion to withdraw a guilty plea should be liberally allowed and should be granted for any fair and just reason unless granting the motion would cause substantial prejudice to the Commonwealth. *Commonwealth v. Katonka,* 33 A.3d 44, 46–47 (Pa. Super. 2011). An assertion of innocence can constitute a fair and just reason for plea withdrawal. *Id.* In the context of a pre-sentence request for plea withdrawal, the term "prejudice" means that, due to events occurring after the entry of the plea, the Commonwealth's prosecution of its case is in a worse position that it would have been had the trial taken place as originally scheduled. *Commonwealth v. Kirsch,* 930 A.2d 1282, 1286 (Pa. Super. 2007).

*Commonwealth v. Gordy,* 73 A.3d 620, 623–24 (Pa. Super. 2013).

The Defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. *Commonwealth v. Carrasquillo,* 115 A.3d 1284, 1292 (Pa. 2015). The proper inquiry is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. *Id.* The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts. *Id.*

8

While this court is cognizant of the standard for pre-sentence withdrawal of a guilty plea, the court found that under the totality of the circumstances of this particular case, the Defendant did not assert a fair and just reason for withdrawal of his plea. The Defendant at no time asserted his innocence. In fact, he gave a full statement to detectives and apologized for committing the murder at sentencing. Furthermore, the Defendant entered into a negotiated plea whereby he avoided a life sentence in exchange for cooperation and waiving the right to withdraw his plea. The Defendant was fully informed of the rights he was giving up and assented. Only after the Defendant failed to live up to his cooperation agreement did he request to withdraw his plea. His reason was that the Commonwealth did not live up to their part of the agreement. As to the Defendant's contention that he should have been permitted to withdraw his plea as being involuntary because the Commonwealth failed to deliver on the bargain; that is simply untrue. It was the Defendant who failed to fulfill his obligations under the agreement. Therefore, it is not a fair and just reason for withdrawal.

This court is also cognizant of *Commonwealth v. Pardo*, 35 A.3d 1222 (Pa. Super.2011), wherein the Superior Court found that a trial court may not curtail a defendant's ability to withdraw his guilty plea "via a boilerplate statement of waiver in a written guilty plea colloquy." This court finds that the instant matter can be distinguished in that this waiver was part of a negotiated cooperation agreement. It was explicit, explained in great detail and the Defendant received the benefit of the bargain by avoiding a life sentence in exchange for his waiver.

## CONCLUSION

Based on the foregoing, the Tymier McPherson's judgement of sentence should be affirmed.

By the Court:

_Rose Marie DeFino-Nastasi_

DeFINO-NASTASI, J.

*Commonwealth v. Tymier McPherson*
CP-51-CR-0000496-2017
Opinion

## Proof of Service

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.CrimP. 114:

Defendant:              Tymier McPherson
NN2659
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

      Type of Service: First-class mail

Counsel:              Gina Amoriello, Esq.
1515 Market Street
Suite 1200
Philadelphia, PA 19102

      Type of Service: First-class mail

District Attorney:     Appeals Unit
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

      Type of Service: Inter-Office mail

Date: 6/15/2020

Bryan Foster
Law Clerk to the
Honorable Rose Marie DeFino-Nastasi